597 S.E.2d 221

**Tarik H. HUDGINS**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0078–02–1.**

Court of Appeals of Virginia,
Richmond.

June 8, 2004.

Benton, J., concurred with opinion.

Elder, J., concurred with opinion.

Annunziata, J., concurred in part and dissented in part, with opinion in which Clements, J., joined.

222

James L. Grandfield, Senior Assistant Public Defender, for appellant.

Amy L. Marshall, Assistant Attorney General (Jerry W. Kilgore, Attorney General, on brief), for appellee.

Before: FITZPATRICK, C.J., BENTON, ELDER, ANNUNZIATA, BUMGARDNER, FRANK, HUMPHREYS, CLEMENTS, FELTON and KELSEY, JJ.

## UPON REHEARING EN BANC

WALTER S. FELTON, JR., Judge.

This matter comes before the Court on a rehearing *en banc* from a panel decision, *Hudgins v. Commonwealth,* 40 Va.App. 1, 577 S.E.2d 505 (2003). In that decision, a divided panel held that Tarik H. Hudgins's acquittal on a prior robbery indictment acted as a bar to his subsequent indictment and prosecution for grand larceny from the person based on the same theft. Reversing his conviction, the panel held that collateral estoppel protections of the Double Jeopardy Clause barred the Commonwealth's subsequent attempt to convict Hudgins of grand larceny from the person of the same property from the same victim.[1]

Upon rehearing *en banc,* we hold that Hudgins's acquittal on the robbery indictment acted as an acquittal of the lesser-included offense of larceny and that the Double Jeopardy Clause barred the Commonwealth's subsequent attempt to

---

1. We conclude that collateral estoppel does not apply to this case. Hudgins never raised collateral estoppel before the trial court, in his petition for appeal, or in his brief or oral argument before the panel. During oral argument before the *en banc* Court, Hudgins expressly conceded that collateral estoppel did not apply in this case. Concessions of law do not bind us, of course, but in this instance we agree with Hudgins. *Tuggle v. Commonwealth,* 230 Va. 99, 111 n. 5, 334 S.E.2d 838, 846 n. 5 (1985). To determine whether collateral estoppel applies, we must ask, "whether a rational [trier of fact] could have grounded its verdict upon an issue *other than* that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson,* 397 U.S. 436, 443–44, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (emphasis added). As the colloquy between counsel and the trial judge confirms, a rational trier of fact could have (and in this case did) ground the robbery acquittal on the lack of violence and intimidation. "The burden is 'on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.' " *Schiro v. Farley,* 510 U.S. 222, 233, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (quoting *Dowling v. United States,* 493 U.S. 342, 347, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)).

convict appellant of grand larceny from the person of that same bicycle from the person of the same victim. To the extent that the holding in *Graves v. Commonwealth*, 21 Va. App. 161, 462 S.E.2d 902 (1995), *aff'd on reh'g en banc*, 22 Va.App. 262, 468 S.E.2d 710 (1996), is in conflict with our decision here, we overrule that holding. Accordingly, we reverse the conviction and dismiss the indictment.

## I.

## BACKGROUND

On October 1, 2000, Hudgins pushed an eleven-year-old boy (the victim) from his bicycle and took the bicycle from him.

On February 28, 2001, the grand jury returned an indictment charging that, "On or about Sunday, October 1, 2000," Hudgins "did rob [the victim] of U.S. Currency or other personal property, in violation of Code § 18.2–58." The value of the property taken was not alleged in the indictment. In a bench trial on March 16, 2001, Hudgins was tried on the robbery indictment and acquitted of robbery. The record of the present trial reflects that before acquitting Hudgins of robbery, the trial court had indicated its belief that the evidence was sufficient to support a conviction for larceny from the person, but that it could not convict Hudgins of that offense because larceny from the person was not a lesser-included offense of robbery. *See Graves*, 21 Va.App. at 166, 462 S.E.2d at 904 (holding that grand larceny from the person was not a lesser offense included within the robbery specification of the indictment).

The record does not reflect whether the Commonwealth asked the trial court to find Hudgins guilty of larceny of the bicycle or whether, in reliance on our holding in *Graves*, the trial court concluded the Commonwealth could seek a subsequent indictment for grand larceny from the person. Whatever the Commonwealth's intention, it does not impact our decision of whether the acquittal of robbery at the first trial necessarily acted as an acquittal of the larceny of the bicycle.

On March 26, 2001, ten days after Hudgins's acquittal of robbery, the grand jury returned an indictment alleging that, "On or about Sunday, October 1, 2000," Hudgins "did steal property having a value of five dollars ($5) or more from the person of [the victim], in violation of Code § 18.2–95."

Hudgins moved to dismiss the indictment on grounds of former jeopardy because of his prior acquittal of robbery based on the same facts. In a memorandum in support of that motion, he conceded that this Court held in *Graves*, under an indictment charging robbery, that it was impermissible to instruct the jury that it could convict the accused of the offense of grand larceny from the person. Hudgins argued that in obtaining the second indictment, the Commonwealth impermissibly relied on the same theft from the same person as the basis for the subsequent indictment that had been the basis of the first indictment on which he was acquitted. The Commonwealth conceded in the trial court that, "the 'same conduct' by [Hudgins] resulted in the two indictments, one for Robbery of which he was acquitted, and one for Grand Larceny from the Person," of which he was convicted.

Relying on *Graves*, the trial court denied the motion to dismiss the second indictment, holding that "[l]arceny from the person is not a lesser-included offense of robbery" and, therefore, is not a bar to a second prosecution after an acquittal of robbery. It also held that "while the act alleged—the theft of a bicycle—may be the same, robbery and larceny from the person are not identical offenses."

After hearing evidence, the trial court convicted Hudgins of grand larceny from the person, and he noted this appeal.

II.

ANALYSIS

On appeal, Hudgins contends the trial court erroneously ruled that his prosecution and conviction for grand larceny from the person, after his previous acquittal for robbery arising out of the same theft, did not violate double jeopardy

principles. He argues that the offense of larceny from the person, the offense for which he was convicted, is a lesser-included offense of robbery, the offense for which he was acquitted, and that the subsequent prosecution for larceny from the person violated his protections against double jeopardy.

■ The double jeopardy protections of the Virginia and United States Constitutions provide that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." *Commonwealth v. Washington,* 263 Va. 298, 304, 559 S.E.2d 636, 638 (2002); *see* U.S. Const. amend V;[2] Va. Const. art. I § 8.[3] These protections prevent prosecution under successive indictments "when (1) the two offenses involved are identical, (2) the former offense is lesser-included in the subsequent offense; and (3) the subsequent offense is lesser-included in the former offense." *Martin v. Commonwealth,* 221 Va. 720, 722, 273 S.E.2d 778, 780 (1981) (citing *Roderick Cecil Jones v. Commonwealth,* 218 Va. 757, 759, 240 S.E.2d 658, 660 (1978)); *see Coleman v. Commonwealth,* 261 Va. 196, 199, 539 S.E.2d 732, 733–34 (2001). Likewise, the double jeopardy protections prevent multiple punishments for the same offense in a single trial. *Jordan v. Commonwealth,* 2 Va.App. 590, 347 S.E.2d 152 (1986).

"It is well established that the Double Jeopardy Clause forbids the retrial of a defendant who has been acquitted of the crime charged." *Bullington v. Missouri,* 451 U.S. 430, 437, 101 S.Ct. 1852, 1857, 68 L.Ed.2d 270 (1981).

An acquittal is accorded special weight. The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal, for the public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though the

---

**2.** "No person ... shall ... be subject for the same offense to be twice put in jeopardy of life or limb...." *U.S. Const. amend.* V.

**3.** "That in criminal prosecutions a man ... shall not ... be put twice in jeopardy for the same offense." Va. Const. art. I § 8.

acquittal was based upon an egregiously erroneous foundation. If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair. The law attaches particular significance to an acquittal.

*United States v. DiFrancesco,* 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) (citations omitted). Put simply, "the Fifth Amendment guarantee against double jeopardy ... surely protects a man who has been acquitted from having to 'run the gantlet' a second time." *Ashe v. Swenson,* 397 U.S. 436, 445–46, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970) (citation omitted).

In *Graves,* which did not involve a double jeopardy challenge, this Court held that grand larceny from the person was not a lesser-included offense of robbery, at least under the specific language of the robbery indictment in that case. *Graves,* 21 Va.App. at 167, 462 S.E.2d at 905. This Court determined that because robbery and grand larceny from the person each had elements of proof that the other did not, grand larceny from the person could not be a lesser-included offense of robbery. *Id.* at 164, 462 S.E.2d at 903. The Court concluded, however, that petit larceny is a lesser-included offense of robbery. *Id.* at 167, 462 S.E.2d at 905.

When Hudgins was acquitted of the robbery in which the bicycle was taken, he was necessarily acquitted of petit larceny of the same bicycle. *Brown v. Ohio,* 432 U.S. 161, 168, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977); *Myers v. Commonwealth,* 148 Va. 725, 729–30, 138 S.E. 483, 484 (1927). The Commonwealth could not later, consistent with double jeopardy protections, prosecute him for larceny, whether grand or petit, of the same bicycle after he was acquitted of the petit larceny of the bicycle in the first trial. To hold otherwise would suggest that Hudgins could not be convicted of petit larceny, but could be convicted of the greater offense of grand larceny of the same bicycle.

The Commonwealth urges that our holding in *Graves* compels us to conclude that robbery and grand larceny from the

person are separate offenses under the "same elements" test and that the acquittal of Hudgins of robbery is not a bar to his subsequent prosecution of grand larceny from the person.

■ In determining whether one offense is the "same offense" as another offense for double jeopardy purposes, the Supreme Court developed the *"Blockburger"* or "same elements" test. This analysis concludes that an offense is not a lesser-included offense in another offense if it contains an element of proof that the greater offense does not. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *see also Brown,* 432 U.S. at 168, 97 S.Ct. at 2226–27. (holding that "[t]he greater offense is . . . by definition the 'same' for purposes of double jeopardy as any lesser offense included in it" and, thus, a conviction for a lesser offense prevented a subsequent conviction for a greater offense). One crime is a lesser-included offense of another crime if "every commission of the greater offense must also be a commission of the lesser offense." *Kauffmann v. Commonwealth,* 8 Va.App. 400, 409, 382 S.E.2d 279, 283 (1989). Under the *Blockburger* analysis, a defendant may not be convicted of both a greater and lesser-included offense because the lesser-included offense "requires no proof beyond that which is required for conviction" of the greater offense. *Brown,* 432 U.S. at 168, 97 S.Ct. at 2226. In *Brown,* the United States Supreme Court also observed that "[i]t has long been understood that separate statutory crimes need not be identical . . . in order to be the same within the meaning of the constitutional prohibition." *Id.* at 164, 97 S.Ct. at 2225. Stated differently, the fact that an act or series of acts is prohibited under two or more distinct provisions of a criminal code does not in itself mean that the conduct constitutes separate offenses for double jeopardy purposes.

Virginia courts have applied the *Blockburger* analysis in cases where the accused has asserted that his double jeopardy protections were violated because he was convicted in a single trial for multiple offenses resulting from a single course of conduct. *Coleman,* 261 Va. at 200, 539 S.E.2d at 734 (holding

accused could not be convicted in a single trial both of attempted murder and malicious wounding for shooting a victim multiple times during a continuous course of conduct). In *Coleman*, the Court noted that, "[I]n the prosecution for two crimes in the same trial, the double jeopardy defense does not apply unless (a) the defendant is twice punished for one criminal act, *and* (b) the two punishments are either for the same crime or one punishment is for a crime which is a lesser included offense of the other." *Id.* at 200, 539 S.E.2d at 734 (emphasis in original) (citing *Brown*, 432 U.S. at 169–70, 97 S.Ct. at 2227–28). The Court, in applying the *Blockburger* test in that setting, noted that "we look at the offenses charged in the abstract, without referring to the particular facts of the case under review." *Coleman*, 261 Va. at 200, 539 S.E.2d at 734.

In other Virginia cases applying the *Blockburger* analysis, this Court has noted that "[t]he elements of the crimes, their 'fundamental nature,' are determinative, not 'the particular facts of a specific case. . . .' " *Crump v. Commonwealth*, 13 Va.App. 286, 290, 411 S.E.2d 238, 241 (1991) (quoting *Taylor v. Commonwealth*, 11 Va.App. 649, 652, 400 S.E.2d 794, 795 (1991)), *quoted with approval in Graves*, 21 Va.App. at 164–65, 462 S.E.2d at 903–04. "Neither the facts charged in the indictment nor those proved at trial determine whether an offense is a necessarily included offense; the determination, instead, is made by examining the elements of the crimes that must be proved in order to sustain a conviction." *Taylor*, 11 Va.App. at 653, 400 S.E.2d at 796. We also said in *Taylor* that

A lesser included offense is necessarily charged by implication in an indictment for a greater offense and necessarily proven by the proof of the greater offense. . . . A crime that is not a necessarily lesser included offense, on the other hand, is not charged by implication and is not necessarily proved by proof of the greater offense.

*Id.* at 652, 400 S.E.2d at 795.

However, we have also said that "[t]he test announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is merely a rule of statutory construction to

determine legislative intent when it is not otherwise clear." *Hall v. Commonwealth,* 14 Va.App. 892, 900, 421 S.E.2d 455, 461 (1992) *(en banc).*

> The Supreme Court has decided that this test need not be applied when the intent of the legislature can be gleaned from a reading of the relevant statutes.... "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature ... intended that each violation be a separate offense."

*Brown v. Commonwealth,* 230 Va. 310, 313, 337 S.E.2d 711, 713 (1985) (quoting *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985)); *see also Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1142–43, 67 L.Ed.2d 275 (1981); *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980). Moreover, the United States Supreme Court has not strictly applied *Blockburger* in every double jeopardy analysis involving multiple convictions for the same offense. *See e.g. Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) *(per curiam)* (holding that, for double jeopardy purposes, the crime generally described as felony murder is not a separate offense distinct from its various elements, including the underlying felony); *United States v. Dixon,* 509 U.S. 688, 698, 113 S.Ct. 2849, 2857, 125 L.Ed.2d 556 (1993) (holding that contempt conviction was barred because drug possession offense, which violated a condition of defendant's release, could not be abstracted from the "element" of the contempt offense). *But see Carter v. United States,* 530 U.S. 255, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (holding that under 18 U.S.C. § 2113(b) "[w]hoever takes and carries away, with intent to steal or purloin, any ... thing of value exceeding $1,000 [from a] ... bank," is not a lesser included of the federal bank robbery statute, 18 U.S.C. § 2113(a), "[w]hoever, by force and violence, or by intimidation, takes .... any ... thing of value [from a] bank").

To determine whether grand larceny, and in particular larceny from the person, is a lesser-included offense of robbery under Virginia law, we must consider whether, definitionally, all the elements of the former are included within the elements of robbery. Robbery, a common law crime in Virginia, is defined as a "taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Johnson v. Commonwealth*, 209 Va. 291, 293, 163 S.E.2d 570, 572–73 (1968). Larceny, also a common law crime in Virginia, is defined "as 'the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently.'" *Bryant v. Commonwealth*, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994); *see Dunlavey v. Commonwealth*, 184 Va. 521, 524, 35 S.E.2d 763, 764 (1945); *Bright v. Commonwealth*, 4 Va.App. 248, 251, 356 S.E.2d 443, 444 (1987). "At common law ... robbery was an aggravated form of larceny.... Larceny was therefore a lesser included offense of robbery at common law." *Carter*, 530 U.S. at 278, 120 S.Ct. at 2173–74 (Ginsberg, J., dissenting) (citing 4 William Blackstone, *Commentaries* *241 (robbery is "[o]pen and violent larciny [sic] from the person"); 2 E. East, *Pleas of the Crown* § 124, *707 (1803) (robbery is a species of "aggravated larceny"); 2 W. Russell & C. Greaves, *Crimes and Misdemeanors* *101 ("robbery is an aggravated species of larceny")). "At common law simple larceny, whether grand or petit larceny, was" a felony, and the two crimes, according to Blackstone, were "considerably distinguished in their punishment, but not otherwise." *Rider v. Commonwealth*, 57 Va. (16 Gratt.) 499, 503 (1860) (citing 4 Blackstone, *supra*, *229). "An offence would amount to grand larceny if the thing stolen were above the value of twelve pence, and it would be petit larceny if it was of that value or under." *Id.*

Looking to the common law to define larceny from the person, this Court has previously concluded:

"Larciny [sic] from the person is either by privately stealing; or by open and violent assault, which is usually called

robbery." ... At common law, larceny from the person differs from robbery in that larceny from the person lacks the requirement that the victim be put in fear.... Larceny from the person forms a middle ground in the common law between the "private" stealing most commonly associated with larceny, and the taking by force and violence commonly associated with robbery.

*Garland v. Commonwealth,* 18 Va.App. 706, 710, 446 S.E.2d 628, 630 (1994) (quoting *State v. Buckom,* 328 N.C. 313, 401 S.E.2d 362, 364–65 (1991) (citations omitted)); *see* 4 Blackstone, *supra,* *241. "Larceny from the person was first distinguished from simple larceny in the sixteenth century, ... when by an act of the English Parliament, larceny from the person was 'debarred of the benefit of clergy.'" *Garland,* 18 Va.App. at 711, 446 S.E.2d at 631 (Benton, J., dissenting) (citing 5 William Blackstone, *Commentaries* *241 (St. George Tucker ed., 1803)). Blackstone noted in his commentaries that the benefit of the clergy was removed from the offense of larceny from the person, "early as by the statute 8 Elizabeth. c. 14." 4 Blackstone, *supra,* *241.

 Pursuant to Code § 1–11, "any statute or act of Parliament, made in aid of the common law prior to the fourth year of the reign of James the First, ... shall still be saved, insofar as the same are consistent with the Bill of Rights and Constitution of this Commonwealth and the Acts of Assembly." [4]

Virginia's jurisprudence is deeply rooted in the ancient precedents, procedures, and practices of the English system of justice. A substantial portion of "[t]he common law of England" and the "writs, remedial and judicial, given by any statute or act of Parliament, made in aid of the common law" has been legislatively incorporated in the law of this Commonwealth. Code §§ 1–10 and –11.

---

[4]. The "fourth year of the reign of James the First" was 1607, the date of the founding of Jamestown. James the IV of Scotland ascended to the throne of England as James I in 1603. *See Foster v. Commonwealth,* 96 Va. 306, 309, 31 S.E. 503, 504 (1898).

*Oehl v. Oehl,* 221 Va. 618, 623, 272 S.E.2d 441, 444 (1980).[5] As in its codification of robbery, the General Assembly did not alter the common law definition of larceny. *Darnell v. Commonwealth,* 12 Va.App. 948, 957, 408 S.E.2d 540, 545 (1991) (citing *Smith v. Cox,* 435 F.2d 453, 457 (4th Cir.1970) ("Larceny is a common law crime, although it is regulated by statute.")). While the General Assembly has not altered the common law elements of robbery and larceny, it has specified in statutory form the punishments for those crimes.[6] The statutory provisions enacted by the General Assembly "will not be held to change the common law unless the legislative intent to do so is plainly manifested." *Herndon v. St. Mary's Hosp., Inc.,* 266 Va. 472, 476, 587 S.E.2d 567, 569 (2003); *see Linhart v. Lawson,* 261 Va. 30, 35, 540 S.E.2d 875, 877 (2001);

---

5. Code § 1–10 states:
 The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly.
 Code § 1–11 states:
 The right and benefit of all writs, remedial and judicial, given by any statute or act of Parliament, made in aid of the common law prior to the fourth year of the reign of James the First, of a general nature, not local to England, shall still be saved, insofar as the same are consistent with the Bill of Rights and Constitution of this Commonwealth and the Acts of Assembly.

6. Code § 18.2–95 provides:
 Any person who (i) commits larceny from the person of another of money or other thing of value of $5 or more, (ii) commits simple larceny not from the person of another of goods and chattels of the value of $200 or more, or (iii) commits simple larceny not from the person of another of any firearm, regardless of the firearm's value, shall be guilty of grand larceny, punishable by imprisonment in a state correctional facility for not less than one nor more than twenty years or, in the discretion of the jury or court trying the case without a jury, be confined in jail for a period not exceeding twelve months or fined not more than $2,500, either or both.
 Code § 18.2–96 provides:
 Any person who (1) Commits larceny from the person of another of money or other thing of value of less than $5, or (2) Commits simple larceny not from the person of another of goods and chattels of the value of less than $200, except as provided in subdivision (iii) of § 18.2–95, shall be deemed guilty of petit larceny, which shall be punishable as a Class 1 misdemeanor.

**234**

*Boyd v. Commonwealth,* 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988); *Acey v. Commonwealth,* 29 Va.App. 240, 248, 511 S.E.2d 429, 432 (1999). A statutory change to the common law will be recognized only as is expressly stated in the words of the statute or as is necessarily implied by its language. *Herndon,* 266 Va. at 476, 587 S.E.2d at 569 (citing *Mitchem v. Counts,* 259 Va. 179, 186, 523 S.E.2d 246, 250 (2000); *Boyd,* 236 Va. at 349, 374 S.E.2d at 302).

■ As in robbery, larceny from the person involves the taking of personal property from the possession or presence of another.[7] In addition, Code §§ 18.2–95(i) and 18.2–96(1) do not separately define larceny from the person, but provide only that larceny from the person of $5 or more shall be punishable as grand larceny and that larceny from the person of less than $5 shall be punishable as petit larceny. It is the theft of the property that is the core of the crime, with the degree of the potential punishment being established by proof of the value of the property taken. The difference between robbery and larceny from the person is that robbery must involve a taking accompanied by, or accomplished through, the use of force, violence, or intimidation. Accordingly, larceny from the person, whether punishable as grand larceny under Code § 18.2–95(i) or petit larceny under Code § 18.2–96(1), includes all of the elements of robbery, except the taking by force or violence, under the common law definition.

Following the common law tradition, Virginia courts have considered larceny from the person to be a lesser-included offense of robbery regardless of the value of the property stolen. *Saunders v. Commonwealth,* 18 Va.App. 825, 827, 447 S.E.2d 526, 528 (1994) (affirming larceny from the person conviction where at trial "the robbery charge was reduced to the lesser included offense of larceny from the person of

---

7. At common law, there was no distinction between grand and petit larceny except in the punishment, which was death in the one case and whipping in the other, which by statute was extended to transportation of the guilty for seven years to the colonies. *Bell v. Commonwealth,* 167 Va. 526, 531, 189 S.E. 441, 444 (1937) (citing 4 George 1, c. 11 (Eng.); 4 Blackstone, *Commentaries* *229, 238).

property valued in excess of five dollars, Code § 18.2–95"); *Broady v. Commonwealth*, 16 Va.App. 281, 291, 429 S.E.2d 468, 474 (1993) (holding that, because reasonable minds could not disagree that the crime was one of robbery, trial court did not err in refusing to instruct on a lesser-included offense of larceny from the person).

■ Here, the Commonwealth argues that grand larceny from the person is not a lesser-included offense of robbery, thus permitting the second indictment. *See Graves*, 21 Va. App. at 163, 462 S.E.2d at 903. In *Graves*, the trial judge "struck the evidence as to [the] robbery ... [indictment, and ruled] that grand larceny from the person is a lesser offense included within a charge of robbery and permitted the case to go forward on a charge of grand larceny from the person." *Id.* A panel of this Court reversed the conviction for grand larceny from the person and held that grand larceny from the person was not a lesser offense included within the robbery specification of the indictment, "[b]ecause the [robbery] indictment against Graves did not set forth allegations of value or of theft from the person, it did not charge grand larceny from the person." *Id.* at 166, 462 S.E.2d at 904.

While the holding in *Graves* relied on the "guidance in *Jones v. Commonwealth*" to support its decision that grand larceny from the person is not a lesser-included offense of robbery, both *Jones* and other Virginia authority support the contrary conclusion—that grand larceny from the person is a lesser-included offense of robbery. *See Martin*, 221 Va. at 723, 273 S.E.2d at 780–81; *Jones*, 218 Va. at 759, 240 S.E.2d at 660; *Clayton Motors v. Commonwealth*, 14 Va.App. 470, 472–73, 417 S.E.2d 314, 315–16 (1992).

The issue addressed in *Graves* was not whether a subsequent indictment for grand larceny from the person would violate the protections of the Double Jeopardy Clause after an acquittal of robbery. It did not address whether the accused could be convicted in a single trial of both larceny from the person and robbery based on the same criminal transaction. *Graves* was limited to whether the trial court correctly gave a

jury instruction on grand larceny from the person as a lesser-included offense for robbery under the indictment then before it.

The Supreme Court has "pointed out that one offense is not lesser-included within another unless all its elements are included in the other." *Martin*, 221 Va. at 723, 273 S.E.2d at 780–81.

"[T]heft is an essential component of robbery and charged as such in every robbery indictment." *Jones*, 218 Va. at 759, 240 S.E.2d at 660. A robbery indictment, therefore, "includes all elements of whatever larceny offense it charges, whether grand or petit, and the larceny offense charged is, therefore, lesser-included in robbery." *Id.* at 760, 240 S.E.2d at 660; *see also Martin*, 221 Va. at 723, 273 S.E.2d at 780–81.

The larceny, however, must be based on the same theft as that which underlies the robbery. If not, the larceny and the robbery are based on "distinct and separate acts" and conviction of one does not bar conviction of the other. *Martin*, 221 Va. at 726, 273 S.E.2d at 782. Whether the robbery and the larceny are based on the same theft may be determined by comparing the two indictments. *Jones*, 218 Va. at 759–60, 240 S.E.2d at 660–61. However, this fact may not always be determined from the indictments, and it may be necessary to examine the evidence. *Martin*, 221 Va. at 725–26, 273 S.E.2d at 782.

*Clayton Motors*, 14 Va.App. at 472–73, 417 S.E.2d at 315–16.

In *Clayton Motors*, which the *Graves* decision did not discuss, the defendant entered a convenience store and asked the clerk for two $300 money orders. *Clayton Motors*, 14 Va.App. at 471, 417 S.E.2d at 315. When the clerk asked for payment, the defendant showed her a pistol in his waistband and ordered her to give him the money orders. *Id.* The defendant was charged and convicted of both robbery and of larceny of the money orders. *Id.* at 472, 417 S.E.2d at 315. We noted that "[w]here a defendant is charged with robbery and larceny based upon 'distinct and separate acts' which do

'not involve the same theft' [of the same object] a defendant is not twice put in jeopardy for the same offense." *Id.* (quoting *Martin,* 221 Va. at 726, 273 S.E.2d at 782); *see also Jones,* 218 Va. at 761, 240 S.E.2d at 661. Where the robbery and the larceny are based upon the theft of the same item, "proof of the larceny is necessarily included in proving the robbery." *Clayton Motors,* 14 Va.App. at 472, 417 S.E.2d at 315 (citing *Martin,* 221 Va. at 723, 273 S.E.2d at 780–81). Accordingly, this Court held that because the defendant was convicted of both the robbery and the theft of the same money orders, punishing for both offenses violated double jeopardy. *Id.* at 473, 417 S.E.2d at 316. Likewise, convicting a person of robbery of a bicycle and the theft of the same bicycle as part of the same transaction would violate double jeopardy. *See Graves,* 21 Va.App. at 167, 462 S.E.2d at 905 (concluding simple larceny is a lesser-included offense under the robbery indictment in that case).

*Martin* and *Jones* differ from the present case in that each of those defendants was convicted of two distinct and separate thefts. In *Martin,* the defendant robbed a service station attendant at gunpoint of the money in his pockets and also of the money kept inside the service station. *Martin,* 221 Va. at 722, 273 S.E.2d at 779. He was indicted for both robbery and grand larceny and convicted of robbery and the lesser-included offense of petit larceny. *Id.* at 722, 273 S.E.2d at 780. He was convicted of petit larceny rather than grand larceny because the Commonwealth failed to prove the value of the money stolen from the service station. *Id.* at 722, 273 S.E.2d at 779–80.

In *Jones,* the defendant threatened the clerk of a motel with a pistol, forcing the clerk to give him the money from the cash drawer and the keys to the motel's courtesy car parked outside. *Jones,* 218 Va. at 758, 240 S.E.2d at 660. He was indicted and convicted of robbery, in violation of Code § 18.2–59, and grand larceny of the automobile, in violation of Code § 18.2–95. *Id.*

Because the defendant in *Martin* stole both the attendant's money and the service station's money and, in *Jones*, the defendant stole both the motel's money and the motel's car outside, each was convicted of both robbery and larceny on the basis of "distinct and separate acts," which "did not involve the same theft." *Martin*, 221 Va. at 726, 273 S.E.2d at 782; *see Jones*, 218 Va. at 761, 240 S.E.2d at 661. Recognizing that a separate robbery and a separate grand larceny could occur during the same series of events, the Supreme Court found that, when considering the "lesser-included" inquiry for double jeopardy purposes, the language of the charges found in the indictments controls and that "grand larceny is a lesser-included offense of robbery only when it is the theft expressly charged in the robbery indictment." *Jones*, 218 Va. at 759, 240 S.E.2d at 660; *see also Graves*, 21 Va.App. at 169, 462 S.E.2d at 905–06 (Coleman, J., dissenting). Significantly, the Court in *Jones*, went on to state,

> Definitionally, theft is an essential component of robbery and charged as such in every robbery indictment. Manifestly, a robbery indictment includes all elements of whatever larceny offense it charges, whether grand or petit, and the larceny offense charged is, therefore, lesser-included in robbery.

*Jones*, 218 Va. at 759–60, 240 S.E.2d at 660. "Thus, the considerations involved in determining whether offenses are the same or lesser-included 'as charged in an indictment' for double jeopardy purposes are quite different from those involved in determining whether the *elements* of offenses are the same for purposes of convicting an accused of a lesser-included offense." *Graves*, 21 Va.App. at 169, 462 S.E.2d at 905–06 (Coleman, J., dissenting).

■ Here, Hudgins was charged initially with robbery for stealing a bicycle from an eleven-year-old victim. In acquitting Hudgins of that robbery, the trial court noted its belief that the evidence was sufficient to convict him of larceny from the person, indicating that it found that the larceny of the bicycle occurred. It did not, however, convict Hudgins of any larceny offense, thereby acquitting him of *any* larceny offense

that was a part of the robbery charge. With Hudgins having been acquitted by the trial court of the larceny of the bicycle, the Commonwealth was thereafter barred by the Double Jeopardy Clause from requiring him to stand trial anew for stealing the same bicycle from the same person in the same criminal act that was the basis of the robbery trial. *Clayton Motors*, 14 Va.App. at 472, 417 S.E.2d at 315.

In *Graves*, the majority relied on common law definitions of robbery and larceny from the person to determine whether grand larceny from the person was a lesser-included offense of robbery charged in the indictment. It focused its analysis not on whether all larceny is a lesser-included offense of robbery, but on whether the particular charging document sufficiently alleged a value that would support a conviction of grand larceny or grand larceny from the person. It concluded that the indictment before it charging robbery did not charge grand larceny from the person.

Relying on our holding in *Garland*, the majority in *Graves* concluded that the "from the person" element of larceny was different than the "in his presence" taking element of robbery.

Thus, we hold that larceny from the person embraces not only theft of property from physical contact with the victim, but also theft of property that is in the victim's possession and within his immediate custody and control.

*Graves*, 21 Va.App. at 166–67, 462 S.E.2d at 904 (citing *Garland*, 18 Va.App. at 710, 446 S.E.2d at 630). The *Graves* majority went on to say that because the perimeter for larceny "from the person" is more restrictive than the "in his presence" perimeter sufficient for robbery, proof that the theft was "in his presence" as required for robbery will not necessarily prove the "from the person" element of grand larceny from the person. *Graves*, 21 Va.App. at 166, 462 S.E.2d at 904. We disagree.

In *Garland*, we said "larceny from the person embraces not only theft of property from physical contact with the victim, but also theft of property that is in the victim's possession and within his immediate custody and control."

*Garland,* 18 Va.App. at 710, 446 S.E.2d at 630. In *Graves,* the defendant snatched a $20 bill from a customer in a diner. *Graves,* 21 Va.App. at 163, 462 S.E.2d at 903. In *Garland,* the defendant was within two feet of the victim, reached over a countertop and took money out of an open cash drawer. *Garland,* 18 Va.App. at 707, 446 S.E.2d at 629. In upholding the conviction of larceny from the person, we held in *Garland* that:

> At common law property was stolen "from the person" of another even if it was only "in the presence" of the person at the time it was stolen. . . . "Property is stolen 'from the person' if it was under the protection of the person . . . although not actually 'attached' to him. . . . As said by Coke in the 1600's: 'for that which is taken in his presence, is in law taken from his person.' "

*Id.* at 709, 446 S.E.2d at 630 (citation omitted); *quoted with approval in Graves,* 21 Va.App. at 171, 462 S.E.2d at 907 (Coleman, J., dissenting). We hold that larceny from the person, whether grand or petit, is a lesser-included offense of robbery,[8] and to the extent that *Graves* is inconsistent with this holding, we overrule *Graves.*

When Hudgins was first tried and acquitted on March 16, 2001 of robbery involving the bicycle, the trial court indicated that the evidence was sufficient to support a conviction of larceny. When it failed to convict, however, the trial court's general verdict of acquittal necessarily acquitted Hudgins of the lesser-included offense of larceny of the bicycle. The trial court's indication in the first proceeding that it believed the evidence was insufficient to prove robbery but sufficient to prove larceny from the person does not support a different result. Jeopardy having attached, and there being an acquittal of larceny of that bicycle, Hudgins could not thereafter be forced to stand trial for that same offense.

---

8. We note that whether the property was "in [the victim's] immediate possession and control" is a factual question, the answer to which will vary from case to case.

A verdict of acquittal on the issue of guilt or innocence is, of course, absolutely final. . . .

"The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*Bullington*, 451 U.S. at 445, 101 S.Ct. at 1861 (quoting *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). The "law attaches particular significance to an acquittal." *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978).

"The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown*, 432 U.S. at 169, 97 S.Ct. at 2227. Indeed, the policy behind the Double Jeopardy Clause "protects the accused from attempts to relitigate the facts underlying a prior acquittal." *Id.* at 165, 97 S.Ct. at 2225. "For whatever else [the Fifth Amendment guarantee against double jeopardy] may embrace, it surely protects a man who has been acquitted from having to 'run the gantlet' a second time." *Ashe*, 397 U.S. at 445–46, 90 S.Ct. at 1195 (citation omitted).

For these reasons, we reverse Hudgins's conviction for grand larceny from the person. To the extent that our holding in *Graves* that larceny from the person is not a lesser-included offense of robbery is inconsistent with this opinion, it is overruled. The trial court erred in denying Hudgins's motion to dismiss the indictment as violative of the Double Jeopardy Clause of the Virginia and United States Constitutions. We reverse and dismiss his conviction.

*Reversed and dismissed.*

BENTON, J., concurring.

For the reasons I have previously explained in *Hudgins v. Commonwealth*, 40 Va.App. 1, 11–17, 577 S.E.2d 505, 510–13 (2003) (Benton, J., concurring), I would hold that principles of collateral estoppel bar this prosecution. Therefore, I too would reverse the conviction.

In the first trial, Tarik H. Hudgins was tried for robbery and acquitted after the presentation of evidence. The second indictment, which charged a larceny arising from the same incident, brought into focus traditional concerns about the protections afforded by the guarantees of the Double Jeopardy Clause.

"The development of the Double Jeopardy Clause from its common-law origins ... suggests that it was directed at the threat of multiple prosecutions...." Thus ... the "controlling constitutional principle" focuses on prohibitions against multiple trials. At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression. The Clause, therefore, guarantees that the State shall not be permitted to make repeated attempts to convict the accused, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." "[S]ociety's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws."

*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568–69, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977) (citations omitted).

The record establishes that on February 28, 2001, a grand jury indicted Hudgins for robbing "Brinkley [on October 1, 2000] of ... currency or other personal property." A judge tried Hudgins on that charge and acquitted him on March 16,

2001. Ten days later, the grand jury returned another indictment for grand larceny, alleging that on "October 1, 2000, [Hudgins] did steal property having a value of five dollars ... or more from the person of ... Brinkley." Overruling Hudgins's double jeopardy objection, the same judge tried him on this second indictment and convicted him of this larceny offense. At this second trial, the judge found and the prosecutor agreed that the property at issue in both indictments was the same bicycle. Indeed, the Commonwealth on appeal concedes this to be the case. Hudgins contends, as he did at trial, that the prosecution under this second indictment violates constitutional guarantees against double jeopardy.[9]

"It is well established that the Double Jeopardy Clause forbids the retrial of a defendant who has been *acquitted* of the crime charged." *Bullington v. Missouri*, 451 U.S. 430, 437, 101 S.Ct. 1852, 1857, 68 L.Ed.2d 270 (1981).

An acquittal is accorded special weight. "The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal," for the "public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation.' If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair." *The law "attaches particular significance to an acquittal."*

*United States v. DiFrancesco*, 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) (emphasis added) (citations omitted). Put simply, "the Fifth Amendment guarantee against double jeopardy ... surely protects a man who has been acquitted from having to 'run the gantlet' a second time."

---

9. Hudgins's attorney asserted in his brief en banc and at oral argument that collateral estoppel is a component of double jeopardy. *See Ashe v. Swenson*, 397 U.S. 436, 442–45, 90 S.Ct. 1189, 1193–95, 25 L.Ed.2d 469 (1970) (holding that the Fifth Amendment guarantee against double jeopardy embodies collateral estoppel as a constitutional requirement).

*Ashe v. Swenson*, 397 U.S. 436, 445–46, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970).

When Hudgins was first tried and acquitted on March 16, 2001 of the charge of robbery involving the bicycle, that proceeding acted as an acquittal also of the lesser-included offense of larceny of the bicycle. "The greater offense is . . . by definition 'the same' for purposes of double jeopardy as any lesser offense included in it." *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977). Thus, just as an acquittal on a lesser-included offense bars a subsequent prosecution on the greater offense, an acquittal on a greater offense bars a subsequent prosecution on the lesser-included offense. *Id.* "[T]he sequence is immaterial. . . . Whatever the sequence may be, the Fifth Amendment forbids successive prosecution . . . for a greater and lesser included offense." *Id.* at 168–69, 97 S.Ct. at 2227. In other words, whenever a prosecutor can request a lesser-included instruction, a blanket acquittal is an implicit acquittal on each lesser included offense; and a later trial on any lesser-included charge would put the accused twice in jeopardy for the offense. These principles are well established. *See Grafton v. United States*, 206 U.S. 333, 351, 27 S.Ct. 749, 753–54, 51 L.Ed. 1084 (1907).

The indictment the grand jury issued on March 26, 2001, ten days after Hudgins was acquitted of robbery, charged a grand larceny of the same bicycle that was involved in the robbery charge. When the trial judge acquitted Hudgins after trial on March 16, 2001 of the robbery charge, he did not convict Hudgins of the lesser offense of larceny. We do not know whether the prosecutor sought a larceny conviction in the first trial or, instead, decided to forego that option and to seek a second indictment, believing that *Graves v. Commonwealth*, 21 Va.App. 161, 462 S.E.2d 902 (1995), *aff'd on reh'g en banc*, 22 Va.App. 262, 468 S.E.2d 710 (1996), would permit that action.[10]

---

10. In *Graves*, a trial judge "struck the evidence as to [the] robbery . . . [indictment, and ruled] that grand larceny from the person is a lesser offense included within a charge of robbery and permitted the case to go forward on a charge of grand larceny from the person." 21 Va.App.

Whatever the prosecutor's intention, the acquittal at the first trial necessarily acted as an acquittal of the larceny. As the Supreme Court noted in *Grafton*, when addressing an acquittal following a murder trial, " 'had the defendant been guilty, not of [the greater offense] but of [the lesser offense], he would have been found guilty of the latter offense upon that indictment.' " 206 U.S. at 351, 27 S.Ct. at 753 (citation omitted).

In that vein, the Supreme Court's observation in *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), is pertinent to the acquittal that resulted from Hudgins's first trial.

The petitioners were tried under a valid indictment in a ... court which had jurisdiction over them and over the

---

at 163, 462 S.E.2d at 903. We reversed the conviction for grand larceny from the person and held as follows:

> Because the [robbery] indictment against Graves did not set forth allegations of value or of theft from the person, it did not charge grand larceny from the person. Therefore, grand larceny from the person was not a lesser offense included within the robbery specification of the indictment.

*Id.* at 166, 462 S.E.2d at 904. *Graves* was not a double jeopardy case. In deciding *Graves*, we merely found *"guidance* in *Jones v. Commonwealth,* 218 Va. 757, 240 S.E.2d 658 (1978)." 21 Va.App. at 165, 462 S.E.2d at 904 (emphasis added). The defendant in *Jones* was "convict[ed] of grand larceny of an automobile following his conviction of robbery involving larceny of money." 218 Va. at 758, 240 S.E.2d at 659. Although the defendant in *Jones,* unlike in *Graves,* contended that his conviction for larceny was barred by the principle of double jeopardy, he did "not contend that the two crimes of which he was convicted [were] identical offenses." *Id.* at 759, 240 S.E.2d at 660. Indeed, the defendant "contend[ed] that the theft of the money underl[aid] the robbery conviction and the theft of the car underl[aid] the grand larceny conviction." *Id.* at 760, 240 S.E.2d at 661. Thus, the Supreme Court noted that "grand larceny of the car was not charged in the robbery indictment," *id.* at 760, 240 S.E.2d at 660–61, and noted further that "the two thefts involved two separate and distinct acts of caption and two different acts of asportation." *Id.* at 761, 240 S.E.2d at 661. Significantly, the Supreme Court held that because "theft is an essential component of robbery and charged as such in every robbery indictment ..., a robbery indictment includes all elements of whatever larceny offense it charges, whether grand or petit, and the larceny offense charged is, therefore, lesser-included in robbery." *Id.* at 759–60, 240 S.E.2d at 660. Clearly, Hudgins's case arises in a different posture than *Graves* and raises a related but different issue than *Jones.*

subject matter. The trial did not terminate prior to the entry of judgment.... It terminated with the entry of a final judgement of acquittal.... The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, "[t]he verdict of acquittal was final, and could not be reviewed ... without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution."

*Id.* at 143, 82 S.Ct. at 672 (citations omitted). *See also Smalis v. Pennsylvania,* 476 U.S. 140, 144 n. 7, 106 S.Ct. 1745, 1748 n. 7, 90 L.Ed.2d 116 (1986) (noting that " '[t]he fact that "the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles" ... affects the accuracy of that determination but it does not alter its essential character' "); *Arizona v. Rumsey,* 467 U.S. 203, 211, 104 S.Ct. 2305, 2310, 81 L.Ed.2d 164 (1984) (holding that although the trial judge "relied on a misconstruction of the statute ... [in making findings concerning the criminal offense, that] error of law ... does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits"); *Sanabria v. United States,* 437 U.S. 54, 64, 98 S.Ct. 2170, 2179, 57 L.Ed.2d 43 (1978) (holding that "when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous"); *Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978) (holding that courts must "necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision").

When, as in this case, "an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194. Thus, the Commonwealth could not relitigate the ultimate facts resolved in the first trial in Hudgins's favor by the acquittal for robbery and necessarily for the larceny of the bicycle.

Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law ... [for] more than 50 years....

[T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational [trier of fact] could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180, 184. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based on a general verdict of acquittal.

*Ashe,* 397 U.S. at 443–44, 90 S.Ct. at 1194 (footnote omitted).

Unlike in *Jones v. Commonwealth,* 218 Va. 757, 240 S.E.2d 658 (1978), Hudgins alleges that the two indictments charged offenses involving a taking of the identical object. *Cf.* 218 Va. at 759, 240 S.E.2d at 660 (noting that the "[d]efendant does not contend that the two crimes of which he was convicted are identical offenses"). Hudgins contends that the same property was the subject of each indictment and that the same offense was the subject of both indictments. The Commonwealth agrees that the taking alleged in both indictments involved the same bicycle. This is precisely the circumstance that the constitutional guarantees against double jeopardy forbid.

A verdict of acquittal on the issue of guilt or innocence is, of course, absolutely final. . . .

"The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrass-

ment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*Bullington,* 451 U.S. at 445, 101 S.Ct. at 1861. The values that underlie these concepts are based on the elemental principle that the "law attaches particular significance to an acquittal." *United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978).

In summary, when Hudgins was acquitted following the trial of the robbery involving the bicycle, he was necessarily acquitted of petit larceny of the bicycle. *Brown,* 432 U.S. at 168, 97 S.Ct. at 2226–27; *Myers v. Commonwealth,* 148 Va. 725, 729–30, 138 S.E. 483, 484 (1927). The Commonwealth could not later prosecute him for larceny, whether grand or petit, of the same bicycle after he was acquitted of the petit larceny in the first trial. "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown,* 432 U.S. at 169, 97 S.Ct. at 2227. Indeed, the policy behind the Double Jeopardy Clause "protects the accused from attempts to relitigate the facts underlying a prior acquittal." *Id.* at 165, 97 S.Ct. at 2225.

Accordingly, I join in the judgment reversing the conviction.

ELDER, J., concurring:

For the reasons set out more fully in the majority opinion I authored at the panel stage in this case, *see Hudgins v. Commonwealth,* 40 Va.App. 1, 577 S.E.2d 505 (2003), I concur with the reasoning of Judge Benton that collateral estoppel protections of the Double Jeopardy Clause barred Tarik Hudgins's prosecution for larceny of the victim's bicycle from his person following Hudgins's acquittal for robbery of the same bicycle from the same victim. I also concur in the majority opinion because, as discussed therein, to the extent we held in *Graves v. Commonwealth,* 21 Va.App. 161, 462 S.E.2d 902 (1995), *aff'd on reh'g en banc,* 22 Va.App. 262, 468 S.E.2d 710

(1996), that grand larceny from the person is not lesser included in robbery, I believe our reasoning in *Graves* was faulty and must be overruled. Thus, I, too, join in reversing and dismissing Hudgins's conviction.

ANNUNZIATA, J., with whom CLEMENTS, J., joins, concurring, in part, and dissenting, in part.

I respectfully dissent from the majority opinion on the grounds that: (1) grand larceny from the person is not a lesser-included offense of robbery, and (2) Hudgins's acquittal on the charge of robbery was not an acquittal of the lesser-included offense of petit larceny and, therefore, is not a bar to a subsequent prosecution for grand larceny from the person. Although I concur with the majority's conclusion that collateral estoppel does not prevent the Commonwealth from prosecuting Hudgins for grand larceny from the person, I write separately to provide a fuller discussion of the issue because I believe a portion of the majority's analysis implicitly rests on the doctrine. In short, I would hold that Hudgins's trial and conviction on the charge of grand larceny from the person did not violate his rights under the Fifth Amendment's Double Jeopardy Clause.

### I. Grand Larceny From the Person Is Not a Lesser–Included Offense of Robbery

The Fifth Amendment to the United States Constitution provides that no person "shall be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "It has long been understood that separate statutory crimes need not be identical—either in constituent elements or in actual proof—in order to be the same within the meaning of the constitutional prohibition." *Brown v. Ohio*, 432 U.S. 161, 164, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. *See, e.g., Brown v. Ohio*, 432 U.S. 161, 168–169, 97

S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (multiple punishment); *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911) (successive prosecutions). The same-elements test, sometimes referred to as the *"Blockburger"* test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993).[11] The constitutional guarantee prohibits successive prosecutions for offenses deemed to be lesser included within the prior offense charged. *Id.*; *Brown*, 432 U.S. at 169, 97 S.Ct. at 2227 ("Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense."); *see also Kauffmann v. Commonwealth*, 8 Va.App. 400, 409, 382 S.E.2d 279, 283 (1989) ("A lesser included offense is an offense which is composed entirely of elements that are also elements of the greater offense.").

The issue in this appeal, therefore, is whether grand larceny from the person is a lesser-included offense of robbery. If it is, Hudgins's acquittal on the charge of robbery bars, by

---

**11.** I note that the majority cites *Dixon* for the proposition that the United States Supreme Court "has not strictly applied *Blockburger* in every double jeopardy analysis involving multiple convictions for the same offense." Although I agree with the substance of the statement, *Dixon* itself firmly established that offenses separately charged and prosecuted must, at a minimum, pass the *Blockburger* test in order to survive a double jeopardy challenge. The *"Blockburger* analysis, whose definition of what prevents two crimes from being the 'same offence,' has deep historical roots and has been accepted in numerous precedents of this Court." *Dixon*, 509 U.S. at 704, 113 S.Ct. at 2860 (citation omitted). Five justices joined that portion of the opinion establishing *Blockburger* as the minimum constitutional standard. The portion of the opinion which the majority cites, *Dixon*, 509 U.S. at 698, 113 S.Ct. at 2857, was joined only by Justices Scalia and Kennedy and, in any event, concludes that, "[b]ecause Dixon's drug offense did not include any element not contained in his previous contempt offense, his subsequent prosecution violates the Double Jeopardy Clause." *Id.* at 700, 113 S.Ct. at 2858.

operation of the Double Jeopardy Clause, a subsequent prosecution for grand larceny. If grand larceny from the person is not a lesser-included offense of robbery, however, the Commonwealth's prosecution of Hudgins for grand larceny from the person was proper because it is not the "same offence" as robbery.

In concluding that the Commonwealth was barred from prosecuting Hudgins for grand larceny because it is a lesser-included offense of robbery, the majority finds that "[t]he General Assembly has not altered the common law elements . . . of larceny." It acknowledges that grand larceny requires proof of value of the item stolen—an additional fact not required to prove robbery—but relegates that additional fact to "merely . . . [the] statutory form [of] . . . *the punishment*[ ] for [the] crime[ ]." [12] It follows that, if proof of value is *not* an *element* of the grand larceny offense, grand larceny from the person is a lesser-included offense of the crime of robbery. Indeed, the majority so holds, stating "larceny from the person, whether punishable as grand larceny . . . or petit larceny . . ., includes all of the elements of robbery, except the taking by force or violence." I respectfully disagree with this analysis.

It is not disputed that the "core" elements of larceny from the person are derived from the common law in Virginia. *See, e.g., George v. Commonwealth,* 242 Va. 264, 277, 411 S.E.2d 12, 20 (1991). However, contrary to the conclusion that the elements of larceny have not been altered, the General Assembly enacted Code § 18.2-95, which defines grand larceny from the person in terms of the value of the property stolen:

> Any person who . . . commits larceny from the person of another of money or other thing of value of $5 or more, . . . shall be guilty of grand larceny, punishable by imprisonment in a state correctional facility for not less than one nor

---

**12.** The majority also concludes that the robbery element requiring proof of an item stolen "from the person or his presence" is more or less equal to the larceny element requiring proof of an item stolen "from the person." I concur in this portion of the majority's reasoning.

more than twenty years or, in the discretion of the jury or court trying the case without a jury, be confined in jail for a period not exceeding twelve months or fined not more than $2,500, either or both.

Neither Virginia case law nor federal law supports the majority's view that the value of the property stolen is a provision going solely to punishment and therefore is not an element of the crime of grand larceny. In *Knight v. Commonwealth*, 225 Va. 85, 300 S.E.2d 600 (1983), the Virginia Supreme Court held that the "value of the goods specified in the grand larceny statute *is an essential element of the crime*, and the Commonwealth bears the burden of proving that element beyond a reasonable doubt." *Id.* at 88, 300 S.E.2d at 601 (emphasis added); *see also Jones v. Commonwealth*, 218 Va. 757, 760, 240 S.E.2d 658, 661 (1978) ("one of the essential elements of [the grand] larceny offense [is] . . . value" (citing Code § 18.2–95)); *Wright v. Commonwealth*, 196 Va. 132, 139, 82 S.E.2d 603, 607 (1954). Similarly, in *Carter v. United States*, 530 U.S. 255, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000), the United States Supreme Court found that proof of value of the property stolen required by a federal bank robbery statute, 18 U.S.C. § 2113(b), is an element of the offense, not a sentencing factor. *Id.* at 272–73, 120 S.Ct. at 2170–71. The Court's conclusion rested on two factors—the structure of the statute and the difference in the penalty prescribed depending on the value of the property stolen. First, the structure of the statute indicated that Congress intended proof of value to be an element. The Court noted that the statute "begins with the word 'whoever,' proceeds to describe . . . the elements of the offense, and concludes by stating the prescribed punishment." *Id.* at 273, 120 S.Ct. at 2171. Second, "the steeply higher penalties—an enhancement from a 1–year to a 10–year maximum penalty upon proof of valuation exceeding $1000— [led the Court] to conclude that the valuation requirement is an element" of the offense.[13] *Id.* (quotations omitted). An

---

13. Based in part on the fact that proof of value is an element of 18 U.S.C. § 2113(b), the Court held that it was not a lesser-included

analysis of Code § 18.2–95 following the Supreme Court's rationale in *Carter* yields a similar result. Code § 18.2–95 begins "any person," proceeds to incorporate the elements of common law larceny from the person, adds the element of proof of value, "and concludes by stating the prescribed punishment." The structure of the grand larceny offense thus indicates the General Assembly's intent to make proof of value an essential element of the crime. The significantly enhanced penalty for grand larceny bolsters this conclusion. Grand larceny is punishable by a term of imprisonment not to exceed twenty years. Code § 18.2–95. Petit larceny, on the other hand, is punishable as a Class 1 misdemeanor, with confinement in jail not to exceed twelve months. Code § 18.2–11.

The conclusion that proof of value is an essential element of the crime of grand larceny from the person is also rooted in the common law's treatment of the facts used to impose certain penalties upon conviction and in the constitutional due process guarantee. In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court noted that "[a]ny possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding." *Id.* at 478, 120 S.Ct. at 2356.[14] In his concurring opinion, Justice Thomas traced the

---

offense of 18 U.S.C. § 2113(a), which contains no such requirement. *Carter,* 530 U.S. at 274, 120 S.Ct. at 2171–72. Although *Carter* was not a double jeopardy case, but rather a case involving the propriety of jury instructions, the Supreme Court conducted a "same elements" analysis, as required by Federal Rule of Criminal Procedure 31(c) and *Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1450–51, 103 L.Ed.2d 734 (1989), that is substantially similar, if not equal, to the *Blockburger* analysis.

**14.** *Apprendi* addressed the constitutionality of New Jersey's hate crime law, which provided for an enhanced sentence if a trial judge found by a preponderance of the evidence that the defendant was motivated by racial bias or hatred. *Id.* at 470, 120 S.Ct. at 2352. It reversed the

historical development and treatment of sentencing factors in the definition of an offense and found that "authority establishes that a 'crime' includes every fact that is by law a basis for *imposing* or *increasing* punishment." *Id.* at 501, 120 S.Ct. at 2368 (Thomas, J., concurring) (emphasis added).[15] Prior to its decision in *Apprendi*, the Supreme Court in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), rejected an argument by the State of Maine that shifting the burden to the defendant in a murder trial to prove he acted "in the heat of passion" is constitutionally permissible because such a fact affects only punishment, not guilt. *Id.* at 696–98, 95 S.Ct. at 1888–89. The Court noted that states cannot, consistent with due process protections afforded the accused, avoid proving all elements of a crime beyond a reasonable doubt by "redefining the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment." *Id.* at 698, 95 S.Ct. at 1889. I therefore discern no principled basis for according different

---

New Jersey Supreme Court's decision to uphold the law and held that "[o]ther than the fact of a prior conviction, any fact·that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362–63.

15. To exemplify the foregoing principle, Justice Thomas discussed the relationship between grand and petit larceny:

[I]f the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact—of whatever sort . . .—the core crime, and the aggravating fact together constitute an aggravated crime just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravated crime.

*Apprendi*, 530 U.S. at 501, 120 S.Ct. at 2368-69 (Thomas, J., concurring). Justice Thomas included in his analysis a compendium of common law cases, some of which discussed the relationship between grand and petit larceny, supporting his position that any fact which increased punishment was considered an element of the offense. *Id.* at 502–10, 120 S.Ct. 2369–73 (citing *Commonwealth v. Smith*, 1 Mass. 245 (1804), *Hope v. Commonwealth*, 50 Mass. (9 Metcalf) 134 (1845), and *Larned v. Commonwealth*, 53 Mass. (12 Metcalf) 240 (1847)). "Conversely," Justice Thomas noted, "where a fact was not the basis for punishment, that fact was, for that reason, not an element." *Id.* at 504, 120 S.Ct. at 2370 (citing *Commonwealth v. McDonald*, 59 Mass. (5 Cush.) 365 (1850)).

and lesser treatment to the proof of value which is part of the definition of grand larceny from the person; it is an essential element of the crime.

The significance of defining the value of property taken in the commission of a larceny as an element of the offense is readily apparent when the *Blockburger* test is applied. Under this test, an offense is not a lesser-included offense if it contains an element of proof that the greater offense does not. *See Dixon,* 509 U.S. at 696, 113 S.Ct. at 2855–56; *Brown,* 432 U.S. at 168–69, 97 S.Ct. 2226–27; *Blockburger,* 284 U.S. at 304, 52 S.Ct. 182. In Virginia, grand larceny from the person requires proof that the value of the item stolen was at least $5; robbery requires no such proof. Following the mandate of *Dixon* and *Blockburger,* I would hold that grand larceny from the person is not a lesser-included offense of robbery. *Accord LaMere v. Risley,* 827 F.2d 622, 626 (9th Cir.1987); *State v. Parker,* 351 S.C. 567, 571 S.E.2d 288, 290 (2002); *Joseph v. State,* 351 S.C. 551, 571 S.E.2d 280, 283 (2002); *cf. Carter,* 530 U.S. at 274, 120 S.Ct. at 2171–72. Indeed, this Court correctly noted in *Graves v. Commonwealth,* 21 Va.App. 161, 462 S.E.2d 902 (1995), that grand larceny from the person cannot constitute a lesser-included offense of robbery because robbery and grand larceny from the person each has elements of proof that the other does not. *Id.* at 164, 462 S.E.2d at 903. I would not reverse *Graves.* Whether pursuant to the principle enunciated in *Graves,* or to an analysis conducted independently of it, I would find that robbery and grand larceny from the person are separate offenses under the "same elements" test of *Blockburger.*

Finally, to the extent that the statements in *Jones,* 218 Va. at 759, 240 S.E.2d at 660, and *Martin v. Commonwealth,* 221 Va. 720, 722–23, 273 S.E.2d 778, 780 (1981), viz. that grand larceny is a lesser-included offense of robbery when the larceny indictment is based on the "same theft" as the robbery indictment,[16] support the majority's conclusion that the grand

---

16. The majority also cites *Clayton Motors v. Commonwealth,* 14 Va.App. 470, 417 S.E.2d 314 (1992), for the same proposition. The Court in *Clayton Motors* relied on *Jones* and *Martin* in reaching its decision that

larceny offense in this case was lesser included within the prior robbery charge because both were based on the theft of the same bicycle, I note that the statements in *Jones* and *Martin* were not essential to the holdings because the larceny and robbery indictments in those cases were based on the theft of different items. *Jones,* 218 Va. at 758, 240 S.E.2d at 659; *Martin,* 221 Va. at 722, 273 S.E.2d at 780. I note further that an analysis which looks to the indictments to determine whether two offenses are the same for double jeopardy purposes is questionable in light of decisions issued subsequent to *Jones* and *Martin. See, e.g., Coleman v. Commonwealth,* 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001) ("In applying the *Blockburger* test, we look at the offenses charged in the abstract, without referring to the particular facts of the case under review."); *Blythe v. Commonwealth,* 222 Va. 722, 725–26, 284 S.E.2d 796, 798 (1981); *see also Whalen v. United States,* 445 U.S. 684, 694 n. 8, 100 S.Ct. 1432, 1439 n. 8, 63 L.Ed.2d 715 (1980) (rejecting a contention in the dissent that it applied *Blockburger* to the particular facts alleged in the indictment). *See also Martin,* 221 Va. at 727 n. 1, 273 S.E.2d at 783 n. 1 (I'Anson, C.J., dissenting) (commenting that, because grand larceny requires proof of value, "[a] strict application of the test set forth in *Blockburger* . . . would thus lead to the conclusion that grand larceny and robbery can never be the 'same offense' because both grand larceny and robbery require proof of a fact which the other does not").

II The Commonwealth Was Not Collaterally
Estopped from Prosecuting Hudgins for
Grand Larceny from the Person

I respectfully disagree with the principal concurring opinion that collateral estoppel prevents the Commonwealth from prosecuting Hudgins for the offense of grand larceny from the person.

---

grand larceny is a lesser-included offense of robbery when the indictments allege the theft of the same item.

Collateral estoppel " 'means simply that when a[n] issue of *ultimate fact* has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *Rhodes v. Commonwealth*, 223 Va. 743, 748, 292 S.E.2d 373, 376 (1982) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)) (alteration in original). In determining whether collateral estoppel applies, this Court must look to the record of the prior criminal proceeding to decide whether the specific issue the defendant seeks to preclude from relitigation was "once determined by a valid and final judgment." *See Ashe*, 397 U.S. at 443–44, 90 S.Ct. at 1194. Where the prior criminal proceeding ended with a general acquittal verdict, this Court cannot say that the issue the defendant "seeks to foreclose from" relitigation was "once determined" *if* we find that "a rational [fact finder] could have grounded its verdict upon" another issue. *See id.* (quotations omitted). Thus, a finding that a rational trier of fact could have grounded its verdict upon another issue precludes application of collateral estoppel to the issue sought to be foreclosed. *See id.* at 444, 90 S.Ct. at 1194; *see also Page v. Commonwealth*, 40 Va.App. 703, 709, 581 S.E.2d 233, 236 (2003). That being said, in order to take advantage of the doctrine of collateral estoppel, the defendant must present this Court with a record of the prior criminal proceeding which serves as the basis for his collateral estoppel argument. *Anderson v. Commonwealth*, 251 Va. 437, 439, 470 S.E.2d 862, 863 (1996). Moreover, the defendant bears the burden "of proving that the precise issue or question he seeks to preclude was raised and determined in the first action." *Rhodes*, 223 Va. at 749, 292 S.E.2d at 376 (quotations omitted).

I note first that Hudgins never presented this Court, either at the panel or en banc levels, with a record of his prior criminal proceeding.[17] I would therefore find that this Court

---

17. Hudgins's failure to provide a record of his prior robbery trial may be explained by the fact that Hudgins never argued the issue of collateral estoppel to the trial court or to this Court. Indeed, as noted by the majority, Hudgins conceded at oral argument that collateral estoppel does not apply in this case.

is "unable to consider the merits of" whether "the Commonwealth was barred by collateral estoppel from presenting ... evidence" of Hudgins's theft of the bicycle. *Anderson*, 251 Va. at 439, 470 S.E.2d at 863 (quotations omitted).

In any event, I would also find that Hudgins failed to carry his burden of proving that "the precise issue or question he seeks to preclude was raised and determined in the first action." *Rhodes*, 223 Va. at 749, 292 S.E.2d at 376 (quotations omitted). Here, the precise issue sought to be precluded is Hudgins's theft of the bicycle. As is often the case, the trial court in Hudgins's trial for robbery issued a general verdict of acquittal, a result which requires that we examine the record of the robbery trial in order to determine whether the trial court "could have grounded its verdict [of acquittal] upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194.

The only parts of the instant record which address the question are the fact of Hudgins's acquittal on the robbery charge and a statement purportedly made by the trial judge after he acquitted Hudgins to the effect that he thought Hudgins could be convicted of petit larceny.[18] *See Hudgins v. Commonwealth*, 40 Va.App. 1, 9, 577 S.E.2d 505, 508 (2003). Considering only the fact of Hudgins's acquittal on the robbery charge, it is entirely conceivable that the trial court acquitted Hudgins of robbery because it determined that the Commonwealth failed to prove force or intimidation, an element of robbery not found in either grand or petit larceny. Thus, the trial court in Hudgins's first trial for robbery "could have grounded its verdict [of acquittal] upon an issue other

---

18. The same judge that tried Hudgins for robbery tried him for grand larceny from the person. Although no record was provided of the robbery trial, the Commonwealth's attorney proffered at the beginning of the grand larceny trial that the trial judge "had indicated from the bench [at the conclusion of the robbery trial] that the evidence was sufficient for larceny from the person, but that [it] was not a lesser included offense of robbery; [and that] therefore [the judge] acquitted him of robbery." Defense counsel objected to the proffer, and the trial judge indicated that he had "no recollection" of making such a statement.

than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194 (quotations omitted); *Page*, 40 Va.App. at 709, 581 S.E.2d at 236. Assuming for the purposes of this discussion that the trial judge made a statement expressing his belief that Hudgins could be convicted of petit larceny, the statement is evidence that the trial court did not specifically exonerate Hudgins of the theft of the bicycle, *see Page*, 40 Va.App. at 709, 581 S.E.2d at 236, a fact which leads inexorably to the conclusion that Hudgins's acquittal was based on the failure to prove force or intimidation. As such, I would not find that collateral estoppel prevents the Commonwealth from relitigating whether Hudgins stole the bicycle and that it, therefore, forecloses the prosecution of Hudgins for grand larceny from the person.

### III. Hudgins Was Not Implicitly Acquitted of Petit Larceny

Hudgins was not expressly acquitted of the petit larceny offense.[19] Nonetheless, the majority concludes that Hudgins's acquittal on the charge of robbery was an *implied* acquittal of the lesser-included offense of petit larceny and that Hudgins therefore could not be prosecuted for the greater offense of grand larceny.[20] Although the majority does not expressly

---

19. An acquittal of a prosecuted offense arises from "[a]n express jury verdict of not guilty" on a specific charge. James A. Shellenberger and James A. Strazzella, *The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies*, 79 Marq. L. Rev. 1, 161 (1995).

20. "To hold otherwise," the majority states, "would suggest that Hudgins could not be convicted of petit larceny, but could be convicted of the greater offense of grand larceny from the person." The conclusion that one could not be convicted of a greater offense where a bar exists to a conviction on the lesser does not ineluctably follow. For example, a defendant can be prosecuted for a greater offense even where a conviction on the lesser offense is barred by the statute of limitations. *See Hall v. Commonwealth*, 2 Va.App. 159, 162 n. 2, 342 S.E.2d 640, 641 n. 2 (1986); *see also* 21 Am. Jur. 2d *Criminal Law* § 295 (2003) ("It frequently happens that a charge of felony includes an offense of a lower grade with a different period of limitation, so that while *the felony is not barred,* the statute has run as to the lesser offense." (emphasis added)); *see generally* C.C. Marvel, Annotation, *Conviction of*

state the theory underlying this conclusion, it implicitly rests on the determination that Hudgins's implied acquittal of petit larceny constituted an adjudication, in defendant's favor, of the facts necessary to sustain a subsequent prosecution for grand larceny. While I agree that an adjudication in defendant's favor, i.e. an acquittal, of the facts necessary to sustain a charge of petit larceny would collaterally estop the Commonwealth from relitigating those same facts in a subsequent prosecution for grand larceny, I respectfully disagree that Hudgins's acquittal of the robbery charge may be deemed an implied acquittal of the lesser offense of petit larceny.[21] The majority's ultimate conclusion that Hudgins could not be prosecuted for grand larceny therefore cannot be sustained.

I note first that the majority relies on two cases, *Brown*, 432 U.S. at 168, 97 S.Ct. at 2226–27, and *Myers v. Commonwealth*, 148 Va. 725, 729–30, 138 S.E. 483, 484 (1927), to support its conclusion that Hudgins's acquittal on the robbery charge results in an implied acquittal of the lesser-included offense.[22]

---

*Lesser Offense, Against which Statute of Limitations Has Run, Where Statute Has Not Run Against Offense with which Defendant Is Charged*, 47 A.L.R.2d 887 (2002).

**21.** My disagreement should not be read as standing for the proposition that the Commonwealth could prosecute Hudgins for petit larceny after he was acquitted on the robbery charge. Clearly, a subsequent prosecution on a petit larceny charge is barred by the application of double jeopardy principles because, under *Blockburger* principles, petit larceny is a lesser-included offense of robbery, *see Graves*, 21 Va.App. at 167, 462 S.E.2d at 904, and double jeopardy protects an individual against multiple prosecutions for the same offense. *See Dixon*, 509 U.S. at 696, 113 S.Ct. at 2855–56.

**22.** The principal concurring opinion also cites *Grafton v. United States*, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084 (1907), for this proposition. Although the *Grafton* decision contains a quotation from a treatise indicating that an acquittal on a murder charge will " 'be a good bar' " to a prosecution for manslaughter, *id.* at 351, 27 S.Ct. 749 (quoting 1 Stark. Cr. Pl. 322 (3d. ed. (date unknown))), it does not state that an acquittal on the greater offense operates as an *acquittal* on a lesser offense. Indeed, the Court's decision in that case was based on the fact that the crime of homicide, which was tried by a military court, was the "same offence" as "assassination," a crime tried in a civilian criminal court subsequent to homicide trial. *See id.* at 351, 355, 27 S.Ct. at 755; *see also supra* note 11.

Neither case, however, stands for the proposition that an *acquittal* of a greater offense implies an acquittal of a lesser-included offense. Rather, they stand only for the principle that the Double Jeopardy Clause bars a subsequent prosecution on the lesser-included offense because, under a *Blockburger* analysis, they are "same offence" within the meaning of the Fifth Amendment. *Brown*, 432 U.S. at 168, 97 S.Ct. at 2226–27; *Myers*, 148 Va. at 729–30, 138 S.E. at 484.

Indeed, I have found no authority which supports the theory the majority advances, viz., that an acquittal of the greater offense necessarily gives rise, by implication, to an acquittal on the lesser. The only authority on the concept of implied acquittals that I have found appears in the context of a trial for more than one offense resulting in a *conviction* of only one offense. *See* James A. Shellenberger and James A. Strazzella, *The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies*, 79 Marq. L. Rev. 1, 168–69 (1995). For instance, an acquittal of a greater offense can be implied where the trier of fact convicts the defendant of a lesser-included offense—but renders no express decision on the greater offense—if it had the opportunity to convict the defendant of either offense. *See, e.g., Green v. United States*, 355 U.S. 184, 190–91, 78 S.Ct. 221, 225–26, 2 L.Ed.2d 199 (1957) (holding that defendant was implicitly acquitted of the charge of first-degree murder where the fact finder, "given the choice between finding him guilty of either first or second degree murder[,] . . . chose the latter"); *see also Price v. Georgia*, 398 U.S. 323, 328–29, 90 S.Ct. 1757, 1760–61, 26 L.Ed.2d 300 (1970). In fact, the United States Supreme Court has declared that an implied acquittal results "only" when a defendant is *convicted* of a lesser-included offense after the trier of fact has been charged to consider both the greater offense and the lesser-included offense. *See Montana v. Hall*, 481 U.S. 400, 403 n. 1, 107 S.Ct. 1825, 1827 n. 1, 95 L.Ed.2d 354 (1987) (*per curiam*); *see also Ohio v. Johnson*, 467 U.S. 493, 502, 104 S.Ct. 2536, 2542–43, 81 L.Ed.2d 425 (1984) (citing *Price*, 398 U.S. at 329, 90 S.Ct. at 1761; *Green*, 355 U.S. at 191, 78 S.Ct. at 225–26). Under

**262**

these circumstances, viz. when a defendant is convicted only of the lesser-included offense after a trial on both the greater and lesser-included offense, it can be deduced that the trier of fact determined that a fact necessary for conviction of the greater offense was not proved. Otherwise, the trier of fact would have convicted on the greater offense.

The same deduction cannot be made where the trier of fact acquits on a greater offense but renders no verdict on the lesser-included offense, such as in the case before this Court. In such a case, the trier of fact may have determined, as discussed *supra* in Part II regarding the issue of collateral estoppel, that an element of the greater offense not essential to the lesser offense was not proved.

Here, Hudgins was not convicted in his first trial of any lesser-included offense; rather, he was simply acquitted of the offense of robbery. Implying an acquittal of the lesser-included offense of petit larceny under these circumstances is therefore not supported by logic or the law.

In short, I would hold that, although the Double Jeopardy Clause *barred* the Commonwealth from prosecuting Hudgins for petit larceny subsequent to the robbery prosecution, the robbery acquittal did not operate to *acquit* Hudgins of the petit larceny offense. Because it cannot be said that Hudgins was implicitly acquitted of petit larceny, the majority's conclusion regarding the Commonwealth's inability to prosecute Hudgins for grand larceny based on the implied acquittal must fail.

## IV. Conclusion

The question this Court was asked to decide is whether Hudgins was prosecuted twice for the same offense in violation of the Double Jeopardy Clause. *See* U.S. Const. amend. V. I would hold that Hudgins's double jeopardy rights were not abrogated because grand larceny is not a lesser-included offense of robbery. *See supra* Part I. I would not find that the Commonwealth was collaterally estopped from prosecuting Hudgins for grand larceny. *See supra* Part II. I would also

not find that Hudgins's acquittal of robbery implicitly acquitted him of petit larceny. *See supra* Part III.

For the foregoing reasons, I would affirm.